# FOR PUBLICATION



**FILED**
Dec 18 2013, 6:58 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JASON R. DELK**
Delk McNally LLP
Muncie, Indiana

ATTORNEYS FOR APPELLEE
PEGGY BUCK AS TRUSTEE OF
THE PEGGY BUCK TRUST:

**BRANCH R. LEW**
**ANDREW S. WILLIAMS**
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| RALPH STOCKTON, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| vs. | )     No. 18A05-1304-CT-160 |
| | ) |
| FALLS AUCTIONEERS AND | ) |
| REALTORS and PEGGY BUCK | ) |
| AS TRUSTEE OF THE PEGGY | ) |
| BUCK TRUST, | ) |
| | ) |
| Appellees. | ) |

## APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable Marianne L. Vorhees, Judge
Cause No.18C01-1005-CT-16

**December 18, 2013**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Ralph Stockton appeals the trial court's summary judgment ruling in favor of Peggy Buck as Trustee of the Peggy Buck Trust. Stockton raises one issue, which we restate as whether the court erred in granting summary judgment in favor of Buck. In addition, Buck raises the issue of whether Stockton's appeal is timely. We reverse and remand.

FACTS AND PROCEDURAL HISTORY

On or about May 17, 2008, Stockton attended an auction conducted by Falls Auctioneers and Realtors ("Falls"). While inspecting a lawn mower which had been advertised for sale, Stockton's feet became caught in some chains which were lying on the ground and in the grass, causing Stockton to fall and break his hip.[1]

On May 11, 2010, Stockton filed a complaint against Falls and Buck which alleged that, while inspecting a riding lawn mower at the auction conducted by Falls, his feet became entangled in a chain which was concealed in tall grass causing him to fall and break his hip, that Buck was the owner of the property at the time, that he was a business invitee of both defendants at the auction, that the defendants were negligent in failing to maintain the property in a reasonably safe condition, failing to discover a hazardous condition, failing to adequately warn invitees of the existence of a hazardous condition, and failing to do what reasonably prudent persons would ordinarily have done under the same circumstances, and that the defendants' negligence was the proximate cause of his injuries.

---

[1] Additional facts as set forth in the parties' designated evidence will be discussed in Part II below.

On July 13, 2012, Buck filed a motion for summary judgment together with designated evidence and a memorandum in support of the motion. Stockton filed a response and designation of evidence in opposition to summary judgment on September 7, 2012, and Buck filed a reply on September 24, 2012. The court held a summary judgment hearing on September 26, 2012. On October 5, 2012, the court entered an order granting Buck's motion for summary judgment. On March 5, 2013, following a jury trial against Falls as the remaining defendant, the jury found that Falls was not at fault, and the court accepted the verdict and entered an Order on Verdict and Judgment in favor of Falls.

On March 4, 2013, Stockton filed a Notice of Appeal which indicated the appeal was taken from a final judgment, that the date of the judgment/order being appealed was March 5, 2013, and that the title of the judgment/order being appealed was Order on Verdict and Judgment.[2] The notice requested the court reporter to transcribe the hearings on Buck's motion for summary judgment held on September 26, 2012, and the jury trial conducted on March 5, 2013. On August 9, 2013, Stockton filed an Amended Notice of Appeal which indicated that the date of the judgment/order being appealed was "March 5, 2013/October 5, 2012" and that the title of the judgment/order being appealed was "Order on Verdict and Judgment/Order on Motion for Summary Judgment." Appellee's Appendix at 5.

---

[2] As noted by Buck, we recognize that the date of the initial notice of appeal was March 4, 2013, one day before the March 5, 2013 Order on Verdict and Judgment. An entry in the chronological case summary on March 8, 2013, indicates that Stockton filed a notice of appeal. The notice identifies the March 5, 2013 order as the order being appealed, and Buck does not argue or point to authority to show that the initial notice of appeal was untimely as to the March 5, 2013 order.

DISCUSSION

Stockton argues that the trial court erred in entering summary judgment in favor of Buck. Buck argues that summary judgment was proper and also that Stockton's appeal is untimely.

I.

We first address Buck's contention that Stockton's appeal is untimely. As previously noted, the trial court entered an order granting Buck's motion for summary judgment on October 5, 2012, and following a jury trial an Order on Verdict and Judgment was entered on March 5, 2013. Stockton filed his initial notice of appeal on March 4, 2013, identifying the March 5, 2013 order as the order being appealed, and filed an amended notice of appeal on August 9, 2013, identifying the March 5, 2013 and October 5, 2012 orders as the orders being appealed.

Buck argues that Ind. Appellate Rule 9 requires the appellant to specify the date and title of the judgment or order being appealed and that Stockton's initial notice of appeal specified the trial court's March 5, 2013 order on verdict and judgment only and did not specify the court's October 5, 2012 order granting Buck's motion for summary judgment. In his reply brief, Stockton argues that, consistent with this court's opinion in Trinity Baptist Church v. Howard, 869 N.E.2d 1225 (Ind. Ct. App. 2007), trans. denied, his notice of appeal with respect to the final judgment was timely with respect to the trial court's interlocutory order granting summary judgment. Stockton also notes that his initial notice of appeal requested a transcription of the hearing on Buck's motion for summary judgment and thus that Buck was on notice that the summary judgment order

4

was an issue on appeal. Stockton argues that the amended notice of appeal was a clarification that he desired to appeal only the interlocutory order and not the final judgment following the jury trial.

In Trinity, this court held that a claimed error in an interlocutory order is not waived for failure to take an interlocutory appeal and that, if a notice of appeal from a final judgment is filed, it is also timely as to the appeal of interlocutory orders entered before the final judgment. 869 N.E.2d at 1227. With respect to whether the trial court's October 5, 2012 order granting Buck's motion for summary judgment was final or interlocutory, we note that the order did not dispose of all claims as to all parties, that the court did not in writing expressly determine that there was no just reason for delay and direct entry of judgment as to less than all the issues, claims or parties, and that Buck does not point to authority to show that the order was otherwise deemed final by law. See Ind. Appellate Rule 2(H) (providing in part that a judgment is a final judgment if "it disposes of all claims as to all parties," the trial court "in writing expressly determines under . . . Trial Rule 56(C) that there is no just reason for delay and in writing expressly directs the entry of judgment . . . under Trial Rule 56(C) as to fewer than all the issues, claims or parties," or "it is otherwise deemed final by law"); Ind. Trial Rule 56(C) (stating in part that "[a] summary judgment upon less than all the issues involved in a claim or with respect to less than all the claims or parties shall be interlocutory unless the court in writing expressly determines that there is no just reason for delay and in writing expressly directs entry of judgment as to less than all the issues, claims or parties"). Accordingly, the trial court's summary judgment order was an interlocutory order. In

5

addition, the trial court did not certify the interlocutory order to allow an immediate appeal under Ind. Appellate Rule 14(B). Stockton's timely appeal from the final judgment is also timely as to the appeal of the October 5, 2012 interlocutory order. See Trinity, 869 N.E.2d at 1227; see also Stephens v. Irvin, 730 N.E.2d 1271, 1277 (Ind. Ct. App. 2000) (recognizing the practical effect of the trial court's ruling dismissing a defendant party from the cause of action and denying the plaintiffs' request to add another defendant party was to end the litigation due to the fact there were no longer any viable defendants and holding that, "procedurally speaking, the cause of action had not concluded, in that there was no final judgment"), aff'd on reh'g, trans. denied. Stockton's notice of appeal was not untimely.

## II.

The next issue is whether the trial court erred in granting summary judgment in favor of Buck and against Stockton. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(c); Mangold ex rel. Mangold v. Ind. Dep't of Natural Res., 756 N.E.2d 970, 973 (Ind. 2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. Mangold, 756 N.E.2d at 973. Our review of a summary judgment motion is limited to those materials designated to the trial court. Id. In reviewing a trial court's ruling on a motion for summary judgment, we may affirm on any grounds supported by the Indiana Trial Rule 56 materials. Catt v. Bd. of Commr's of Knox Cnty., 779 N.E.2d 1, 3 (Ind. 2002). The entry of specific findings and conclusions does not alter the nature of a summary judgment which is a judgment

entered when there are no genuine issues of material fact to be resolved. <u>Rice v. Strunk</u>, 670 N.E.2d 1280, 1283 (Ind. 1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions of law. <u>Id.</u> They merely aid our review by providing us with a statement of reasons for the trial court's actions. <u>Id.</u>

*The Parties' Filings and the Designated Evidence*

In her July 13, 2012 motion for summary judgment, Buck alleged that she was not in control of the property at the time of Stockton's fall and therefore did not have a duty to him. In her designation of evidence, Buck included her affidavit, portions of a deposition of Stockton, and an affidavit of Mike Rust, who held Buck's power of attorney, with an attached contract between Buck and Falls dated March 25, 2008. The contract stated that Buck would not "interfere, prevent, or prohibit [Falls] in any manner from carrying out [its] duties and obligations of this agreement . . . ." Appellee's Appendix at 15.

In her designated affidavit, Buck states that she hired Falls to conduct an auction of her personal property located on the premises where Stockton's fall occurred, and that she: "never owned, possessed or controlled a chain on the premises," moved into assisted living not on the premises in October 2007, was no longer residing at the premises on May 17, 2008, had not been to the premises in the week before the auction, that she was not present on the premises on May 17, 2008, was not in possession or control of the property on that date, and did not participate in or control the auction of her personal property. <u>Id.</u> at 17. In the designated portions of Stockton's deposition he testified that he approached the lawnmower, walked around it, and that "[w]hen I got around here

7

some way I didn't see the chains, got caught right in here and it threw me over here into the driveway." Id. at 22. Stockton later testified "[a]s I walked around the lawnmower and my foot got hung in the chains, it just turned me around and I fell on my side." Id. at 23. When asked if there was anything that obstructed his view from looking at the ground where he was walking, Stockton answered "[n]o," and when asked if he saw the chains after he fell, Stockton answered "[a]fter I fell, and my foot got hung in them, and that's the only time I ever seen them." Id.

In her memorandum in support of her summary judgment motion, Buck argued that whether a duty is owed to a plaintiff in premises liability depends on whether the defendant was in control of the premises when the accident occurred, and that the undisputed facts show that Falls was in control of the premises at the time. Buck argued that the contract between Buck and Falls shows that Falls had exclusive control of the premises by contract, that Buck was not in a position to observe and remedy any potential dangers to Stockton, that Buck had not been present for the auction and had not been at the residence in over a week, that she had not resided at the residence for more than six months, and that ownership of the land alone is not sufficient for premises liability.

In his September 7, 2012 response in opposition, Stockton argued that whether a duty exists and the determination of control are typically questions of fact and that there is no evidence that Buck relinquished control over the condition and maintenance of the premises, including mowing the grass. In his affidavit, Stockton stated that he attended the auction largely for the purpose of potentially purchasing a lawn mower that had been advertised for sale in the newspaper, that, "[a]fter briefly inspecting the lawnmower, I got

my feet caught in some chains that caused me to fall on the driveway and break my hip," and that "Had the grass been maintained and mowed, I would have been able to see the chain and may have avoided being tripped." Appellant's Appendix at 38. Stockton further stated: "I am unsure of the exact length of the grass [] at the time of the incident. However, it had clearly not been mowed for some time and nonetheless prevented me from seeing the chains lying in the grass." Id. at 39. Stockton's position is that Buck failed to conclusively establish that she relinquished complete control to Falls and was unable to negate the existence of a duty to Stockton as an invitee on the property.

*The Trial Court's Summary Judgment Ruling*

On October 5, 2012, the trial court entered an order granting Buck's motion for summary judgment, which stated in part: "The Court will accept as true the assertion in [Stockton's] Affidavit that the grass in the yard was too long, and he could not see the chain and tripped on it" and noted that Buck's affidavit showed that she never owned, possessed, or controlled a chain. Id. at 12. The court found that Falls was in control of the land, that Buck is not liable for a dangerous condition that came into existence after Falls took possession, and that even if Buck had gone to her house on the morning of the auction she could not have mowed as she could not interfere with Falls's conduction of the auction at that point. The order further stated that Stockton did not designate evidence or cite case law that says a landowner has the duty to check his or her property a day or so prior to giving up control for an auction or other event, and that as a matter of law Buck did not owe a duty to Stockton.

9

On appeal, Stockton contends that possession and control of property generally is a question of fact involving occupation and intent to control, that the designated evidence reveals that his injuries were caused by both a chain and the dangerous length of the grass, that the contractual prohibition on Buck interfering with the auction had no bearing on the determination of whether a duty of care existed, and that nothing prohibited Buck from inspecting the premises prior to the auction and removing the dangerous condition of the lengthy grass.

Buck points to Stockton's testimony that he did not look in the grass where he was walking and could not say that he would have seen the chains had he looked, and that she had nothing to do with the placement of the chains, which was done entirely by Falls.

*Discussion and Analysis*

The tort of negligence has three elements: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff resulting from the defendant's breach. Beta Steel v. Rust, 830 N.E.2d 62, 69 (Ind. Ct. App. 2005) (citing Rhodes v. Wright, 805 N.E.2d 382, 385 (Ind. 2004)). Summary judgment is appropriate when the undisputed material evidence negates one element of a claim. Rhodes, 805 N.E.2d at 385. In the absence of the existence of a duty, there can be no negligence. Harris v. Traini, 759 N.E.2d 215, 222 (Ind. Ct. App. 2001). Summary judgment is rarely appropriate in negligence cases. Beta Steel, 830 N.E.2d at 69. "This is because negligence cases are particularly fact sensitive and are governed by a standard of the

objective reasonable person—one best applied by a jury after hearing all of the evidence." Id. (citing Rhodes, 805 N.E.2d at 387).

An owner of property generally is under a duty to keep the property in a reasonably safe condition for business invitees and has an affirmative duty to exercise ordinary care to keep the property in a reasonably safe condition coextensive with the purpose and intent of the invitation. Id. at 70; see Harris, 759 N.E.2d at 225 ("The thread through the law imposing liability upon occupancy of premises is control. Only the party who controls the land can remedy the hazardous conditions which exist upon it and only the party who controls the land has the right to prevent others from coming onto it. Thus, the party in control of the land has the exclusive ability to prevent injury from occurring.") (citations, internal quotation marks, and brackets omitted). This court has stated:

> "In premises liability cases, whether a duty is owed depends primarily upon whether the defendant was in control of the premises when the accident occurred." Rhodes, 805 N.E.2d at 385. The rationale behind this rule "is to subject to liability the person who could have known of any dangers on the land and therefore could have acted to prevent any foreseeable harm." Id. "Generally, whether a duty exists is a question of law for the court to decide." Id. at 386. Sometimes, however, the existence of a duty depends upon underlying facts that require resolution by the trier of fact, and this may include questions regarding who controlled property at the time and place of an accident. See id. Possession and control of property for premises liability purposes has been described as a question of fact involving occupation and intent to control the particular area where the injury occurred. Crist v. K-Mart Corp., 653 N.E.2d 140, 145 (Ind. Ct. App. 1995).

Beta Steel, 830 N.E.2d at 70. In addition, "[a]ctual physical possession of property at the precise moment an accident happens is not always dispositive on the question of control for premises liability purposes, if there was evidence that another party was in a better

position to prevent the harm that occurred." McCraney v. Gibson, 952 N.E.2d 284, 288 (Ind. Ct. App. 2011) (citation omitted), trans. denied.

In Rhodes, Gurtz, a truck driver for Tyson Foods, was struck and killed by a forklift while at Wright Brothers Farm. 805 N.E.2d at 384. The defendants owned the farm and raised chickens under a contract for Tyson, and the accident occurred while Tyson employees were at the farm collecting chickens. Id. The lights in the chicken houses were off and the outside of the chicken houses did not have any lighting to illuminate the loading area, and neither the backup lights nor the backup alarm on the forklift were working. Id. at 384-385. Gurtz's estate sued Wright Brothers Farm, and the trial court granted summary judgment in favor of Wright Brothers Farm. Id. at 385. This court affirmed summary judgment for the defendants in part because it found that they did not owe a duty to Gurtz because they did not exert control over the area where the accident occurred when it occurred, basing its conclusion on the contract between Tyson and the defendants. Id.

On transfer, the plaintiffs argued that the Court of Appeals erred in using the contract between Tyson and the defendants instead of Indiana law to determine if the defendants owed a duty to Gurtz. Id. The Indiana Supreme Court held that the plaintiffs were "correct that Indiana law governs whether Defendants owed a duty to Gurtz," that the Court of Appeals "placed too much emphasis on the contract between Tyson and Defendants in determining that no duty existed," that "[t]he contract aids in understanding the business relationship between Tyson and Defendants, but that is all," and that "[a] person cannot limit his or her tort law duty to third parties by contract." Id.

12

The defendants argued that at the time Gurtz was killed, Tyson controlled the land, so only Tyson could be held responsible for harm to its employees. Id. at 386. The Court held that there was a sufficient factual dispute about whether Tyson or the defendants controlled the premises where and when the accident occurred that a jury should decide the question. Id. The Court also held:

> Furthermore, even if Tyson controlled the premises while it caught chickens, that would not automatically relieve Defendants of responsibility for injuries to Tyson's employees. Defendants have always controlled the external lighting. Tyson provided its contract growers with specifications for building the chicken houses, but Tyson never prescribed any procedure for external lighting around the chicken houses. It neither required nor forbid the installation of external lights. . . . The lack of lighting may have contributed to the accident. . . .
>
> Because the facts are in dispute as to whether Tyson or Defendants controlled the area where the accident occurred at the time it occurred and because Defendants controlled the external lighting that may have contributed to Gurtz's death, summary judgment is inappropriate on this issue.

Id. at 386-387.

Here, in considering whether Buck retained control of the area of Stockton's fall for the purpose of duty we observe that the March 25, 2008 contract between Buck and Falls does not provide or purport to provide that Buck surrender possession and control of the premises to Falls or that such a surrender would result in Falls being responsible for the condition of the premises. There is no language in the contract and no other designated evidence which suggests that Falls agreed to mow the grass or otherwise maintain, check, or be responsible for certain or all conditions which may have existed on all or part of the premises or that Buck was in part relieved, by virtue of the contract or auction, of the duty of a landowner to keep the property in a reasonably safe condition

13

coextensive with the purpose and intent of an invitation for persons to come on the property. The contract did not prescribe any procedures regarding grass mowing. See Rhodes, 805 N.E.2d at 386 (noting the agreement never prescribed any procedure for external lighting). Consistent with the Court's comments in Rhodes, the contract "aids in understanding the business relationship between" Buck and Falls, "but that is all." See id. at 385. The contract did not relieve Buck of any duty she may have owed to third parties but only provided that she would not interfere with the auction of her personal property. We also observe that the contract and the other designated evidence does not show when Falls took possession of the premises to conduct the auction—that is, whether Falls arrived at the premises on the day of the auction or on an earlier date.

In addition, while Buck may not have controlled or directed the placement of the chains and although Stockton may not have looked in the grass where he was walking, the designated evidence demonstrates that there is a question of fact regarding whether Stockton's fall was caused, at least in part, by the length of the grass. In his affidavit, Stockton stated: "Had the grass been maintained and mowed, I would have been able to see the chain and may have avoided being tripped," and that the grass "clearly not been mowed for some time" and "nonetheless prevented me from seeing the chains lying in the grass." Appellant's Appendix at 38-39.

Further, while Buck stated in her affidavit that she had moved into an assisted living facility in October 2007 and that she had not been to the premises in the week before the auction, there is no designated evidence which suggests Buck was unable to have the grass mowed prior to the date of the auction in order to remove any dangerous

14

condition which may have existed or keep the property in a reasonably safe condition coextensive with the purpose and intent of the invitation. There is a sufficient factual dispute regarding control of the condition of the premises and in particular the length of the grass that a trier of fact should decide the question. See Rhodes, 805 N.E.2d at 386 (holding that there was a sufficient factual dispute about whether Tyson or the defendants controlled the premises where and when the accident occurred that a jury should decide the question); Beta Steel, 830 N.E.2d at 71 (noting that "[a]lthough Hyre had effectively taken over the electrical control room at the time of Brian's death and purportedly controlled how the work would be performed, Beta had been fully responsible for the installation of the electrical control cabinet on which he stepped"). Furthermore, the designated evidence shows that the nature of the auction was such that individuals were expected to walk in close proximity to the items such as the lawn mower. See Beta Steel, 830 N.E.2d at 71 (noting that the "[t]he nature of the job requested by Beta required persons to work in close proximity to and above this cabinet").

CONCLUSION

There are questions of fact regarding whether Stockton's fall was caused in part by the length of the grass and whether Buck controlled the length of the grass. It cannot be said as a matter of law that Buck owed no duty to Stockton and Buck was not entitled to summary judgment on this basis.[3]

---

[3] Buck and the trial court in its summary judgment order cite to Reed v. Beachy Const. Corp., in which the trial court granted summary judgment to the Johnsons as home owners, finding that they did not have control of the construction of the deck upon which an accident occurred. 781 N.E.2d 1145, 1147 (Ind. Ct. App. 2002), trans. denied. On appeal, the court noted that the undisputed facts were that the Johnsons owned the home where the accident occurred, had moved only a few miscellaneous items into the home, and had not moved in the rest of their personal property, and it was undisputed that the

15

For the foregoing reasons, we reverse the trial court's order granting Buck's motion for summary judgment and remand for further proceedings.

Reversed and remanded.

NAJAM, J., and MATHIAS, J., concur.

---

Johnsons had agreed to postpone possession of the property until after a home show at the builder's request. Id. at 1149. The court found that the Johnsons owned the property but were neither in possession nor control of the premises during the home show and noted that the simple fact of ownership is not necessarily dispositive of the question of possession or control and the duty that arises therefrom. Id. at 1150. The court held that "[b]ecause the Johnsons postponed possession of the premises and surrendered control of it to [the builder] for purposes of the tour, they did not control the premises to the extent a duty to Reed arose." Id. In this case, unlike in Reed, the designated evidence does not demonstrate that Buck was not in possession and control of the premises prior to the auction or prior to permitting Falls to conduct the auction on the premises. We find the designated evidence in Reed to be distinguishable from the designated evidence in this case.